**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEONARD FYOCK; SCOTT HOCHSTETLER; WILLIAM DOUGLAS; DAVID PEARSON; BRAD SEIFERS; ROD SWANSON, *Plaintiffs-Appellants*, <br><br> v. <br><br> CITY OF SUNNYVALE; THE MAYOR OF SUNNYVALE; ANTHONY SPITALERI, in his official capacity; THE CHIEF OF THE SUNNYVALE DEPARTMENT OF PUBLIC SAFETY; FRANK GRGURINA, in his official capacity, *Defendants-Appellees*. | No. 14-15408 <br><br> D.C. No. 5:13-cv-05807-RMW <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
November 17, 2014—San Francisco, California

Filed March 4, 2015

Before: Michael Daly Hawkins and Johnnie B. Rawlinson, Circuit Judges, and Barbara M. G. Lynn, District Judge.[*]

Opinion by Judge Hawkins

## SUMMARY[**]

### Civil Rights/Second Amendment

The panel affirmed the district court's denial of a request to preliminarily enjoin an ordinance enacted by the City of Sunnyvale, California, restricting the possession of "large-capacity magazines"—statutorily defined as a detachable ammunition feeding device capable of accepting more than ten rounds.

The panel held that the district court applied the appropriate legal principles and did not clearly err in finding, based on the record before it, that a regulation restricting possession of certain types of magazines burdened conduct falling within the scope of the Second Amendment. The panel further agreed with the district court that intermediate scrutiny was appropriate. The panel held that Sunnyvale's interests in promoting public safety and reducing violent crime were substantial and important government interests. So, too, were Sunnyvale's interests in reducing the harm and

---

[*] The Honorable Barbara M. G. Lynn, United States District Judge for the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

lethality of gun injuries in general, and in particular as against law enforcement officers. The panel held that the evidence identified by the district court was precisely the type of evidence that Sunnyvale was permitted to rely upon to substantiate its interest. The panel concluded that the district court did not abuse its discretion in determining, on the record before it, that Sunnyvale presented sufficient evidence to show that the ordinance was likely to survive intermediate scrutiny and that plaintiffs failed to demonstrate that they would likely succeed on the merits of their claim.

## COUNSEL

Erin E. Murphy (argued), Bancroft PLLC, Washington, D.C.; C. D. Michel, Glenn S. McRoberts, Clinton B. Monfort, Sean A. Brady and Anna M. Barvir, Michel & Associates, P.C., Long Beach, California, for Plaintiffs-Appellants.

Roderick M. Thompson (argued), Anthony P. Schoenberg and Rochelle L. Woods, Farella Braun + Martel LLP, San Francisco, California, for Defendants-Appellees.

Robert C. Wright and Andrew E. Schouten, Wright & L'Estrange, San Diego, California; Lawrence G. Keane, General Counsel, The National Shooting Sports Foundation, Inc., Newtown, Connecticut, for Amicus Curiae The National Shooting Sports Foundation, Inc.

Dan M. Peterson, Dan M. Peterson PLLC, Fairfax, Virginia, for Amici Curiae International Law Enforcement Trainers and Educators Association, California Reserve Peace Officers Association, Law Enforcement Legal Defense Fund, Law Enforcement Action Network, CRPA Foundation, Law

Enforcement Alliance of America, Inc., San Francisco
Veteran Police Officers' Association, California County
Sheriffs Bosenko, Christianson, D'Agostini, Downey, Durfor,
Growdon, Hencraft, L. Jones, S. Jones, Lopey, McMahon,
Mele, Mims, Parker, Poindexter, Wilson and Youngblood,
and District Attorney Egan.

David B. Kopel, Independence Institute, Denver, Colorado;
John Parker Sweeney, T. Sky Woodward and James W.
Porter, III, Bradley Arant Boult Cummings, LLP,
Washington, D.C., for Amici Curiae The Center for
Constitutional Jurisprudence and Gun Owners of California.

Brian S. Koukoutchos, Mandeville, Louisiana, for Amicus
Curiae Pink Pistols.

Gregory Silbert and Vanessa W. Chandis, Weil, Gotshal &
Manges, LLP, New York, New York, for Amicus Curiae
Everytown for Gun Safety.

Shannon S. Broome and Julia A. Miller, Katten Muchin
Roseman, LLP, Oakland, California; Jonathan K. Baum,
Katten Muchin Roseman LLP, Chicago, Illinois, for Amici
Curiae Law Center to Prevent Gun Violence and Cleveland
School Remembers.

Michael N. Feuer, City Attorney of Los Angeles, James P.
Clark, Chief Deputy City Attorney, Debra L. Gonzales,
Assistant City Attorney, Los Angeles, California, for Amicus
Curiae City of Los Angeles; Dennis J. Herrera, City Attorney
of San Francisco, Wayne Snodgrass and Christine Van Aken,
Deputy City Attorneys, San Francisco, California, for Amicus
Curiae City and County of San Francisco.

Foster C. Johnson, Mayer Brown LLP, Palo Alto, California; Jonathan Lowy and Robert Wilcox, Brady Center to Prevent Gun Violence, Washington, D.C., for Amici Curiae Brady Center To Prevent Gun Violence, the Major Chiefs Association, and the International Brotherhood of Police Officers.

## OPINION

HAWKINS, Circuit Judge:

In this interlocutory appeal, Leonard Fyock, William Douglas, Scott Hochstetler, David Pearson, Brad Seifers, and Ron Swanson (collectively "Fyock") challenge an order denying their request to preliminarily enjoin an ordinance recently enacted by the City of Sunnyvale, California ("Sunnyvale"), restricting the possession of "large-capacity magazines"—statutorily defined as a detachable ammunition feeding device capable of accepting more than ten rounds. Fyock claims that Sunnyvale's ordinance, part of a ballot measure known as Measure C, violates his Second Amendment right to keep and bear arms and will irreparably harm him if not immediately enjoined.

We have jurisdiction pursuant to 18 U.S.C. § 1292(a)(1). Because we find that the district court did not abuse its discretion in deciding Fyock's likelihood of success on the merits of his constitutional challenge, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The manufacture, sale, purchase, and possession of large-capacity magazines has been regulated in California for approximately twenty years through a combination of federal and state laws. In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act ("Crime Control Act"), which proscribed, among other things, the possession of "large capacity ammunition feeding devices"—also defined as any magazine capable of accepting more than ten rounds of ammunition. *See* Pub. L. 103-322, Sept. 13, 1994, 108 Stat. 1796, 1998–2000 (formerly codified at 18 U.S.C. § 922 (w)); *see also San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996). Beginning in 2000, California criminalized the manufacture, sale, purchase, transfer, and receipt of large-capacity magazines within the state, but did not specifically criminalize the possession of large-capacity magazines, which was covered at the time by federal law. *See* CAL. PENAL CODE §§ 32310, 16740. In 2004, the Crime Control Act lapsed, leaving a "loophole" permitting the possession of large-capacity magazines in California.

In the wake of recent mass shootings and in recognition of the "violence and harm caused by and resulting from both the intentional and accidental misuse of guns," Sunnyvale sought to enhance public safety by enacting further gun safety measures. In part, Sunnyvale sought to close the "loophole" created by the expiration of the Crime Control Act. In November 2013, Sunnyvale voters passed Measure C,

thereby amending the Municipal Code to include the large-capacity magazine restriction at issue in this appeal.[1]

In relevant part, Measure C, now codified at Sunnyvale, Cal. Muni. Code §§ 9.44.030–060, provides:

> No person may possess a large-capacity magazine in the city of Sunnyvale whether assembled or disassembled. For purposes of this section, "large-capacity magazine" means any detachable ammunition feeding device with the capacity to accept more than ten (10) rounds, but shall not include any of the following:
>
> > (1) A feeding device that has been permanently altered so that it cannot accommodate more than ten (10) rounds; or
> >
> > (2) A .22 caliber tubular ammunition feeding device; or
> >
> > (3) A tubular magazine that is contained in a lever action firearm.

---

[1] In full, Measure C adds four new regulations to Sunnyvale's Municipal Code: (1) a reporting requirement for lost or stolen firearms within Sunnyvale; (2) a firearm storage requirement; (3) a restriction on the possession of large-capacity magazines; and (4) an ammunition sales record-keeping requirement. *See* Sunnyvale, Cal. Muni. Code §§ 9.44.030, 9.44.040, 9.44.050, 9.44.060. Only the third provision of Measure C, codified at § 9.44.050, is at issue in this appeal and the underlying merits action.

Sunnyvale, Cal. Muni. Code § 9.44.050(a).  The ordinance contains multiple exceptions, which permit the possession of large-capacity magazines within the city by certain individuals and under certain circumstances.  *Id.* § 9.44.050(c).

Measure C went into effect on December 6, 2013, and covered individuals in Sunnyvale were given ninety days—until March 6, 2014—to comply with the ordinance by: (1) removing their large-capacity magazines from city limits; (2) surrendering their large-capacity magazines to the Sunnyvale Department of Public Safety; or (3) transferring their large-capacity magazines to a licensed gunsmith.  *Id.* § 9.44.050(b).

Fyock brought the underlying suit against Sunnyvale and other individual defendants (collectively "Sunnyvale") challenging the constitutionality of Measure C.  Fyock (along with the other Plaintiffs) is a resident of Sunnyvale, who currently owns large-capacity magazines and wishes to possess those magazines within Sunnyvale's city limits.  Fyock moved for a preliminary injunction in an effort to enjoin Measure C and forestall the March 6, 2014, compliance date.  The district court denied Fyock's motion, and Fyock filed a timely notice of appeal.

## STANDARD OF REVIEW

We review the denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo.  *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).  As a result, we are not called upon today to determine the ultimate merits of Fyock's claims.  Instead, we are called upon to determine whether the district court relied

on an erroneous legal premise or abused its discretion in denying Fyock's motion seeking preliminary injunctive relief. *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010). In making this determination, we consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *DISH Network Corp.*, 653 F.3d at 776 (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir.1982)).

As we have previously noted, there are limitations to interlocutory appeals of this nature given the narrow scope of our review:

> [I]n some cases, parties appeal orders granting or denying motions for preliminary injunctions in order to ascertain the views of the appellate court on the merits of the litigation, but . . . due to the limited scope of our review . . . our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits and . . . such appeals often result in unnecessary delay to the parties and inefficient use of judicial resources.

*Id.* (citation and internal quotation marks omitted). Mindful of our task to determine only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at hand, we turn to Fyock's arguments and the district court's denial of the preliminary injunction.

## DISCUSSION

To obtain a preliminary injunction, Fyock was required to show (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in his favor, and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because we determine that the district court did not abuse its discretion in finding Fyock failed to demonstrate the first element for a preliminary injunction, we need not reach the remaining elements. *See Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953, 970 (9th Cir. 2014); *DISH Network Corp.*, 653 F.3d at 776–77.[2]

## I.  Test for Evaluating Second Amendment Claims

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Second Amendment protects an individual right to keep and bear arms, *District of Columbia v. Heller*, 554 U.S. 570 (2008), that is fully applicable to the states and municipalities, *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

---

[2] We note, however, that during the pendency of this appeal, Fyock stipulated to a stay of the underlying merits action, stating that the stay would cause him no harm and in fact would benefit him. Given this concession, it seems unlikely Fyock could make the requisite showing of irreparable harm to support the issuance of a preliminary injunction at this time.

Second Amendment jurisprudence has changed substantially in the wake of the Supreme Court's landmark decision in *Heller*. *Heller* struck down Washington D.C.'s handgun ban, finding that a complete ban on the "quintessential self-defense weapon" was historically unprecedented and too severely diminished the core Second Amendment right to survive constitutional scrutiny. 554 U.S. at 628–29. In doing so, the Supreme Court confirmed that the Second Amendment has "the core lawful purpose of self-defense" and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 630, 635. But, the right to keep and bear arms is limited, and regulation of the right in keeping with the text and history of the Second Amendment is permissible. *Id.* at 626.

To evaluate post-*Heller* Second Amendment claims, the Ninth Circuit, consistent with the majority of our sister circuits, employs a two-prong test: (1) the court "asks whether the challenged law burdens conduct protected by the Second Amendment"; and (2) if so, what level of scrutiny should be applied. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

## II. Application to Measure C

Turning to the facts of this case, we consider whether the district court erred in its application of the two-prong test established in *Chovan*, and we find there was no abuse of discretion.

A.  *Burden on Conduct Protected by the Second Amendment*

The Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. The Supreme Court has emphasized that nothing in its recent opinions is intended to cast doubt on the constitutionality of longstanding prohibitions traditionally understood to be outside the scope of the Second Amendment. *Id.* at 626–27. Importantly, the Second Amendment does not "protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625 (citing *United States v. Miller*, 307 U.S. 174 (1939)). Thus, longstanding prohibitions on the possession of "dangerous and unusual weapons" have uniformly been recognized as falling outside the scope of the Second Amendment. *Id.*; *see also United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (machine guns are "dangerous and unusual" weapons).

The district court could have found that Sunnyvale's ordinance does not burden conduct protected by the Second Amendment if the record contained evidence that large-capacity magazines have been the subject of longstanding, accepted regulation or are otherwise "dangerous and unusual" weapons understood to be outside the scope of the Second Amendment. *See Jackson*, 746 F.3d at 960; *Chovan*, 735 F.3d at 1137.

1.  *Longstanding Regulation*

The parties did not provide evidence regarding the historical prevalence and regulation of large-capacity magazines. Thus, the district court was unable to analyze

whether the regulation resembled prohibitions historically exempted from the Second Amendment.

On appeal, Sunnyvale and its *amici* point to several state regulations from the early twentieth century that restricted the possession of firearms based on the number of rounds that the firearm could discharge automatically or semi-automatically without reloading. Although not from the founding era, these early twentieth century regulations might nevertheless demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record. *See Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue.").

The district court did not abuse its discretion by concluding that Fyock failed to show a likelihood of success on the merits even if Measure C burdens conduct protected by the Second Amendment. Consequently, we need not determine at this juncture whether firing-capacity regulations are among the longstanding prohibitions that fall outside of the Second Amendment's scope.[3]

---

[3] This court has previously discouraged bypassing the historical analysis step and assuming without deciding that conduct burdens the Second Amendment. *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1167 (9th Cir. 2014). At this early, preliminary injunction stage, however, we do not find it necessary to independently undertake a historical analysis that was unavailable to the district court due to an undeveloped record. As the merits action proceeds and the parties develop the record, the district court will be able to adequately assess the historical roots and implications of firing-capacity regulations.

## 2. *Dangerous and Unusual Weapons*

Measure C would also be outside the scope of the Second Amendment if large-capacity magazines are "dangerous and unusual weapons." *See Heller*, 554 U.S. at 627; *Henry*, 688 F.3d at 640. To determine this, we consider whether the weapon has uniquely dangerous propensities and whether the weapon is commonly possessed by law-abiding citizens for lawful purposes. *Henry*, 688 F.3d at 640.

Regulation of a weapon not typically possessed by law-abiding citizens for lawful purposes does not implicate the Second Amendment. *Heller v. District of Columbia*, 670 F.3d 1244, 1260 (D.C. Cir. 2011) [hereafter *Heller II*]; *United States v. Marzzarella*, 614 F.3d 85, 93–94 (3d Cir. 2010) (guns with obliterated serial numbers); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (machine guns).

Although Sunnyvale presented evidence regarding the increased danger posed by large-capacity magazines, it did not present significant evidence to show that large-capacity magazines are also "unusual."[4]  Instead, Fyock presented evidence that magazines, including some meeting

---

[4] But for the Crime Control Act's 2004 expiration, which lifted the national restrictions on the possession of large-capacity magazines, Sunnyvale's reliance on the regulatory prohibitions on possession of large-capacity magazines would be persuasive evidence that the magazines are "unusual." *See Henry*, 688 F.3d at 640 ("A machine gun is 'unusual' because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o) has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market."). And, as Fyock conceded at oral argument, there must be some level at which magazines of a heightened capacity are "unusual."

Sunnyvale's definition of large-capacity magazines, are frequently offered for commercial sale and marketed for self-defense.  He also presented sales statistics indicating that millions of magazines, some of which again were magazines fitting Sunnyvale's definition of large-capacity magazines, have been sold over the last two decades in the United States.

Because Fyock relies primarily on marketing materials and sales statistics, his evidence does not necessarily show that large-capacity magazines are in fact commonly possessed by law-abiding citizens for lawful purposes.  However, we cannot say that the district court abused its discretion by inferring from the evidence of record that, at a minimum, magazines are in common use.  And, to the extent that certain firearms capable of use with a magazine—e.g., certain semi-automatic handguns[5]—are commonly possessed by law-abiding citizens for lawful purposes, our case law supports the conclusion that there must also be some corollary, albeit not unfettered, right to possess the magazines necessary to render those firearms operable.  *See Jackson*, 746 F.3d at 967 (right to possess firearms implies corresponding right to possess ammunition necessary to use them).

The district court applied the appropriate legal principles and did not clearly err in finding, based on the record before it, that a regulation restricting possession of certain types of magazines burdens conduct falling within the scope of the Second Amendment.

---

[5] We do not opine today on the constitutionality of any regulations regarding semi-automatic handguns nor do we suggest that such a regulation could not pass constitutional muster.  We simply recognize that based on the evidence of record at the time of its ruling, the district court's conclusions were not clearly erroneous.

B.  *Level of Scrutiny*

We next consider whether the district court abused its discretion by applying intermediate scrutiny or by finding that Measure C survived intermediate scrutiny.

>    1.  *Determination of the Appropriate Level of Scrutiny*

The district court correctly recognized that to determine the appropriate level of scrutiny, the court must consider (1) how closely the law comes to the core of the Second Amendment right; and (2) how severely, if at all, the law burdens that right.  *Chovan*, 735 F.3d at 1138.  Intermediate scrutiny is appropriate if the regulation at issue does not implicate the core Second Amendment right *or* does not place a substantial burden on that right.  *Jackson*, 746 F.3d at 964.

The D.C. Circuit is the only circuit court to date that has analyzed the constitutionality of a law prohibiting the possession of large-capacity magazines.  In its well-reasoned opinion, the court explained that D.C.'s "prohibition of . . . large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves."  *Heller II*, 670 F.3d at 1262. Therefore, the regulation's burden on the core Second Amendment right was

not substantial and warranted intermediate scrutiny review.[6] *Id.* at 1261–62.

Here, the district court similarly concluded that Measure C likely reaches the core Second Amendment right, but its resulting impact on that right is not severe. Because Measure C restricts the ability of law-abiding citizens to possess large-capacity magazines within their homes for the purpose of self-defense, we agree with the district court that Measure C may implicate the core of the Second Amendment. *Compare Jackson*, 746 F.3d at 963 (handgun storage law implicated core right because it applied to law-abiding citizens' possession of handguns within the home for self defense); *with Chovan*, 735 F.3d at 1138 (law prohibiting firearm possession by violent misdemeanant did not implicate core right because it did not regulate possession by law-abiding citizens). Consistent with the reasoning of our sister circuit, we also agree that intermediate scrutiny is appropriate.

Measure C is simply not as sweeping as the complete handgun ban at issue in *Heller* and does not warrant a finding

---

[6] All federal district courts to consider a restriction on the possession of large-capacity magazines have also applied intermediate scrutiny and found that the regulation at issue survived intermediate scrutiny. *See Friedman v. City of Highland Park*, No.1:13-cv-09973, 2014 WL 4684944, *1, *9–10 (N.D. Ill. Sept. 18, 2014) (local law prohibiting possession of magazines over ten rounds survived intermediate scrutiny); *San Francisco Veteran Police Officers Ass'n v. City and Cnty. of San Francisco*, 18 F. Supp. 3d 997, 1003 (N.D. Cal. 2014) (same); *Shew v. Malloy*, 994 F. Supp. 2d 234, 247–50 (D. Conn. 2014) (same); *N.Y. State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 990 F. Supp. 2d 349, 365–67, 371 (W.D.N.Y. 2013) (same); *see also Colo. Outfitters Ass'n v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2014 WL 3058518, *3, *15–18 (D. Colo. June 26, 2014) (local law prohibiting possession of magazines over fifteen rounds survived intermediate scrutiny).

that it cannot survive constitutional scrutiny of any level. Indeed, Measure C does not affect the ability of law-abiding citizens to possess the "quintessential self-defense weapon"—the handgun. *See Heller*, 554 U.S. at 629. Rather, Measure C restricts possession of only a subset of magazines that are over a certain capacity. It does not restrict the possession of magazines in general such that it would render any lawfully possessed firearms inoperable, nor does it restrict the number of magazines that an individual may possess. To the extent that a lawfully possessed firearm could not function with a lower capacity magazine, Measure C contains an exception that would allow possession of a large-capacity magazine for use with that firearm. Sunnyvale, Cal. Muni. Code § 9.44.050(c)(8).

For these reasons, there was no abuse of discretion in finding that the impact Measure C may have on the core Second Amendment right is not severe and that intermediate scrutiny is warranted. *See Jackson*, 746 F.3d at 961 ("[F]irearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not."); *Heller II*, 670 F.3d at 1262.

## 2. *Application of Intermediate Scrutiny*

Finally, we consider whether the district court abused its discretion in finding that Measure C was likely to survive intermediate scrutiny. In the context of Second Amendment challenges, intermediate scrutiny requires: "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139.

To survive intermediate scrutiny, Sunnyvale was not required to show that Measure C is the least restrictive means of achieving its interest. *Jackson*, 746 F.3d at 966 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)). Instead, Sunnyvale was required to show only that Measure C promotes a "substantial government interest that would be achieved less effectively absent the regulation." *Colacurcio v. City of Kent*, 163 F.3d 545, 553 (9th Cir. 1998) (internal quotation marks omitted). When reviewing the reasonable fit between the government's stated objective and the regulation at issue, the court may consider "the legislative history of the enactment as well as studies in the record or cited in pertinent case law." *Jackson*, 746 F.3d at 966 (citing *Chovan*, 735 F.3d at 1140).

Sunnyvale's foremost stated objective for enacting Measure C is to promote public safety by reducing the harm of intentional and accidental gun use. Measure C is also intended to reduce violent crime and reduce the danger of gun violence, particularly in the context of mass shootings and crimes against law enforcement. It is "self-evident" that Sunnyvale's interests in promoting public safety and reducing violent crime are substantial and important government interests. *See Chovan*, 735 F.3d at 1139; *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994). So, too, are Sunnyvale's interests in reducing the harm and lethality of gun injuries in general, *see Jackson*, 746 F.3d at 970, and in particular as against law enforcement officers, *see Heller II*, 670 F.3d at 328.

Sunnyvale was entitled to rely on any evidence "reasonably believed to be relevant" to substantiate its important interests. *See City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 52 (1986). Sunnyvale presented evidence

that the use of large-capacity magazines results in more gunshots fired, results in more gunshot wounds per victim, and increases the lethality of gunshot injuries. Sunnyvale also presented evidence that large-capacity magazines are disproportionately used in mass shootings as well as crimes against law enforcement, and it presented studies showing that a reduction in the number of large-capacity magazines in circulation may decrease the use of such magazines in gun crimes. Ultimately, the district court found that Sunnyvale "submitted pages of credible evidence, from study data to expert testimony to the opinions of Sunnyvale public officials, indicating that the Sunnyvale ordinance is substantially related to the compelling government interest in public safety."

In this appeal, Fyock asks us to re-weigh the evidence and overturn the district court's evidentiary determinations—in effect, to substitute our discretion for that of the district court. The district court considered Fyock's counter-evidence regarding the use of large-capacity magazines for self-defense purposes. But, the district court gave little weight to that evidence because the record also contained studies indicating that most defensive gun use incidents involved fewer than ten rounds of ammunition. Other studies suggest that any impact Measure C may have on the defensive use of large-capacity magazines may also further Sunnyvale's interest in promoting public safety. *See Heller II*, 670 F.3d at 1263–64 (citing study finding that defenders using large-capacity magazines are likely to "keep firing until all bullets have been expended, which poses grave risks to others in the household, passersby, and bystanders"). In any event, the district court was not required to find that the ordinance is the *least* restrictive means of achieving Sunnyvale's interest. *Jackson*, 746 F.3d at 966 (a city must be allowed "a reasonable opportunity to

experiment with solutions to admittedly serious problems." (quoting *City of Renton*, 475 U.S. at 52)).

The evidence identified by the district court is precisely the type of evidence that Sunnyvale was permitted to rely upon to substantiate its interest, *City of Renton*, 475 U.S. at 51–52, and that the district court was permitted to review under the lens of intermediate scrutiny, *Jackson*, 746 F.3d at 966. We cannot say that the district court's weighing of the evidence or credibility determinations were clearly erroneous, and we decline to substitute our own discretion for that of the district court.

## CONCLUSION

We conclude that the district court did not abuse its discretion in determining, on the record before it, that Sunnyvale presented sufficient evidence to show that Measure C was likely to survive intermediate scrutiny and that Fyock failed to demonstrate that he would likely succeed on the merits of his claim. Therefore, we affirm the district court's denial of Fyock's motion for a preliminary injunction.

**AFFIRMED**.